**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

Randi Weingarten, *in her official capacity as President of the American Federation of Teachers*,
555 New Jersey Ave. N.W.
Washington, DC 20001-2079

Civil Action No. __________

Antonio Lozada
c/o Berger Montague, PC
1001 G Street, N.W., Suite 400 East
Washington, DC 20001

David Petley
c/o Berger Montague, PC
1001 G Street, N.W., Suite 400 East
Washington, DC 20001

Jennie Allen
c/o Berger Montague, PC
1001 G Street, N.W., Suite 400 East
Washington, DC 20001

Jennifer Jessel
c/o Berger Montague, PC
1001 G Street, N.W., Suite 400 East
Washington, DC 20001

Alexander Watts
c/o Berger Montague, PC
1001 G Street, N.W., Suite 400 East
Washington, DC 20001

Renee Johnson
c/o Berger Montague, PC
1001 G Street, N.W., Suite 400 East
Washington, DC 20001

Elizabeth Schoepflin
c/o Berger Montague, PC
1001 G Street, N.W., Suite 400 East
Washington, DC 20001

Carly Baetz
c/o Berger Montague, PC

1001 G Street, N.W., Suite 400 East
Washington, DC 20001

Stephanie Costa
c/o Berger Montague, PC
1001 G Street, N.W., Suite 400 East
Washington, DC 20001

Plaintiffs,

v.

U.S. Department of Education,
400 Maryland Avenue, SW
Washington, DC 20202

Linda McMahon, in her official capacity as Secretary of Education,
400 Maryland Avenue, SW
Washington, DC 20202

Defendants.

---

## COMPLAINT

---

## PRELIMINARY STATEMENT

1. For the third time in fewer than two years, Plaintiff Weingarten and the American Federation of Teachers (AFT), joined by members and student loan borrowers from across the country, are bringing suit against the U.S. Department of Education (the Department) for its unlawful attempt to trap public service workers in debt and undermine the promise of the Public Service Loan Forgiveness (PSLF) program. As a result of its unlawful actions, educators, healthcare professionals, and government employees are forced to pay thousands of dollars in monthly payments on federal student loans that should legally be forgiven while the Department holds these borrowers' PSLF rights in limbo, in violation of Congress's intent when it created the PSLF program.

2. In 2007, Congress made a promise to millions of student loan borrowers across the country: work in public service for ten years and their remaining federal student loan debt will be forgiven. Whereas previous administrations have taken steps to keep Congress's promise, the Department is now pushing eligible borrowers farther away from debt forgiveness by illegally withholding or delaying PSLF "Buyback" determinations, failing to award borrowers credit for time worked in public service, and illegally clawing back previously credited time..

3. The Department's actions more than break the promise of PSLF—they create a financial and emotional burden for public service workers.

4. These burdens are felt especially strongly by Named Plaintiffs and AFT members, who have committed to take on student loan debt to earn degrees needed for careers in public service, relying on their legal right to eventual debt cancellation.

5. This case is as simple as it is important: through its various actions and inactions, the Department is trapping in debt borrowers whose loans should be forgiven, forcing them to choose between making unnecessary and burdensome payments or slipping into default. Plaintiffs bring this action to enforce borrowers' statutory, regulatory, and contractual rights to PSLF, and to compel the Department to honor Congress's promise to public service workers.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, the Mandamus Act, 28 U.S.C. § 1361, the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because Plaintiff's headquarters is in D.C., because Defendants reside in D.C., and because a substantial part of the events giving rise to these claims occurred in this District.

## PARTIES

8. Plaintiff Randi Weingarten is President of the American Federation of Teachers, AFL-CIO, representing 1.875 million members. Prior to her election as President in 2008, Ms. Weingarten served for 11 years as president of the United Federation of Teachers, AFT Local 2, representing approximately 200,000 educators in the New York City public school system, home childcare providers, and other workers in health, law, and education, and prior to that served as a teacher at Clara Barton High School and counsel to the UFT president, taking a lead role in lawsuits to secure adequate school funding and building health and safety conditions. President Weingarten brings this suit solely in her capacity as President of AFT.

9. Plaintiff AFT is a membership organization representing 1.875 million pre-K through 12th-grade teachers, early childhood educators, paraprofessionals, and other school-related personnel; higher education faculty and professional staff; federal, state, and local government employees; and nurses and other healthcare professionals.

10. AFT's headquarters is in Washington, D.C. Its 1.875 million members belong to more than 3000 locals across all fifty U.S. states.

11. AFT's mission is to promote fairness, democracy, economic opportunity, and high-quality public education, healthcare, and public services for students, their families, and their communities. It meets this mission by ensuring its members receive fair pay and benefits for their critical work and by fighting for safe working conditions that also benefit students, patients, and all those who use public services. Helping children and students, and ensuring the economic security and dignity of AFT's members and their families, is at the core of this mission.

12. As part of this work, AFT takes a leading role in fighting for the financial stability of public service, education, and health care workers, particularly when it comes to the increasingly crippling costs of education.

13. Many of AFT's members have student loan debt, and the vast majority of members work in professions that serve children, patients, and communities. Many of those roles require a higher education degree and 75 percent work in professions eligible for Public Service Loan Forgiveness (PSLF).

14. Many of these PSLF-eligible AFT members chose to pursue careers in public service, even though they earn lower wages than the private sector, partially due to the expected benefit of PSLF.

15. AFT members held up their end of the bargain. They spent a decade or more teaching in public schools, caring for patients, and serving their communities, often at lower pay, in reliance on the government's promise of PSLF.

16. AFT has long fought to preserve PSLF's bipartisan purpose: enabling teachers, nurses, first responders, and other public service workers to enter and remain in jobs that serve their communities without being pushed into financial hardship. The Department's conduct turns that purpose on its head by penalizing the very public servants Congress set out to protect.

17. AFT and its members have exhausted every other avenue for relief. Members have submitted buyback requests, called their servicers, and sought help through the channels the Department itself created, and many have received no response or answers that contradict the Department's own rules. The offices that once resolved these disputes are gone: the Consumer Financial Protection Bureau's Student Loan Ombudsman has been fired, the complaint function on StudentAid.gov has been removed, and nearly all of Federal Student Aid's complaint-resolution

staff have been terminated. With nowhere else to turn, AFT brings this action on behalf of members who face mounting and ongoing harm. Their right to debt forgiveness is being withheld or postponed, monthly payments they had stopped budgeting for have resumed, and debt they believed was behind them now threatens their credit, their housing, and their families' financial security. Some are reconsidering whether they can afford to stay in public service at all, which is the very outcome PSLF was designed to prevent. AFT itself has been forced to divert staff and resources from its core mission to triage these members' cases, work it cannot sustain and should never have had to do.

18. AFT provides its members with assistance and accurate information on student loan repayment and PSLF—which is made all the more difficult by the Department's misconduct. The Department has not only broken its promise to public servants. It has also dismantled the mechanisms those borrowers would use to hold it accountable.

19. Under the leadership of AFT President Randi Weingarten, AFT has spent, and continues to spend, tens of thousands dollars on debt clinics to educate members to better navigate their repayment options, and it has diverted more than two thousand hours of valuable staff time that would otherwise have been spent focused on issues like collective bargaining; retirement security; healthcare; student learning conditions; and educators', public employees', and health care workers' working conditions. In response to the Department's failure to process PSLF applications and general mismanagement of the PSLF program, AFT staff have had to repeatedly redraft clinic curriculum and have diverted significant additional staff time to additional clinics and to answering member questions. AFT committed to expanding economic security programs for members and developed a new online learning series and financial literacy clinic curriculum to help members. The program development has been delayed due to the actions of the Department

and the new demand from members with student debt. AFT was preparing to end a multi-year contract with a tech company called Summer which provided direct services to members with student debt. Due to the uncertainty and lack of communication from the Department, the union has had to reallocate resources and extend the contract through June 2027.

20. The relief sought in this complaint would inure to the benefit of hundreds, if not thousands, of AFT members who are actually injured by the Department's refusal to perform its statutory duties in administering the PSLF program and granting relief to eligible borrowers.

21. Plaintiff Antonio Lozada is a natural person who resides, and at all times relevant to this action has resided, in Pembroke Pines, Florida. Plaintiff Lozada owes approximately $191,000 in federal student loan debt, which he has been paying for over 10 years without delinquency or default while pursuing PSLF. By May 2024, his PSLF tracker on StudentAid.gov reflected that he had accrued 116 of the 120 necessary qualifying payments for PSLF, and he was on track to reach 120 payments for his loans by September 2024. The Department placed Plaintiff Lozada's loans, along with the loans of millions of other borrowers, into an involuntary forbearance beginning in Summer 2024, during which time he was unable to accrue more credit toward PSLF. In November 2024, and again in May 2025, Plaintiff Lozada submitted PSLF Buyback applications to recoup these months in forbearance for PSLF. The Department has not processed his applications. The Department is withholding Plaintiff Lozada's statutory right to cancellation through PSLF.

22. Plaintiff David Petley is a natural person who resides, and at all times relevant to this action has resided, in Coos Bay, Oregon. Plaintiff Petley owes approximately $338,000 in federal student loan debt, which he has been paying for over 10 years without delinquency or default while pursuing PSLF. By June 2024, his StudentAid.gov account shows he had accrued

110 of the 120 necessary qualifying payments for PSLF, and he was on track to reach 120 payments for his loans by April 2025. The Department placed Plaintiff Petley's loans into an involuntary forbearance in July 2024, during which time he was unable to accrue more credit toward PSLF. In May 2025, Plaintiff Petley submitted two PSLF Buyback applications to recoup those months in forbearance for PSLF. The Department has not processed his applications. The Department is withholding Plaintiff Petley's statutory right to cancellation through PSLF. Plaintiff Petley is a member of AFT.

23. Plaintiff Jennie Allen is a natural person who resides, and at all times relevant to this action has resided, in Catskill, New York. Plaintiff Allen owes approximately $196,000 in federal student loan debt, which she has been paying for over 10 years without delinquency or default while pursuing PSLF. By May 2024, her PSLF tracker on StudentAid.gov reflected that she had accrued 113 of the 120 necessary qualifying payments for PSLF, and she was on track to reach 120 payments for most of her loans by December 2024. The Department placed Plaintiff Allen's loans into an involuntary forbearance in June 2024, during which time she was unable to accrue more credit toward PSLF. In or around November 2025, Plaintiff Allen submitted a PSLF Buyback application to recoup those months in forbearance for PSLF. The Department has not processed her application. The Department is withholding Plaintiff Allen's statutory right to cancellation through PSLF. Plaintiff Allen is a member of AFT.

24. Plaintiff Jennifer Jessel is a natural person who resides, and at all times relevant to this action has resided, in Pittsburgh, Pennsylvania. Plaintiff Jessel owes approximately $50,000 in federal student loan debt, which she has been paying for over 10 years without delinquency or default while pursuing PSLF. By July 2024, her StudentAid.gov account shows she had accrued 110 of the 120 necessary qualifying payments for PSLF, and she was on track to reach 120

payments for her loans by June 2025. The Department placed Plaintiff Jessel's loans into an involuntary forbearance in September 2024, during which time she was unable to accrue more credit toward PSLF. In July 2025, Plaintiff Jessel submitted a PSLF Buyback application to recoup those months in forbearance for PSLF. The Department has not processed her application. The Department is withholding Plaintiff Jessel's statutory right to cancellation through PSLF. Plaintiff Jessel is a member of AFT.

25. Plaintiff Alexander Watts is a natural person who resides, and at all times relevant to this action has resided, in or around Columbus, Ohio. Plaintiff Watts owes approximately $68,000 in federal student loan debt, which he has been paying for over 10 years without delinquency or default while pursuing PSLF. By July 2024, his StudentAid.gov account shows he had accrued 98 of the 120 necessary qualifying payments for PSLF, and he was on track to reach 120 payments for his loans by May 2026. The Department placed Plaintiff Watts's loans into an involuntary forbearance in August 2024, during which time he was unable to accrue more credit toward PSLF. In March 2026, Plaintiff Watts submitted a PSLF Buyback application to recoup those months in forbearance as well as several earlier months for PSLF. The Department has not processed his application. The Department is withholding Plaintiff Watts's statutory right to cancellation through PSLF. Plaintiff Watts is a member of AFT.

26. Plaintiff Renee Johnson is a natural person who resides, and at all times relevant to this action has resided, in Newport Beach, California. Plaintiff Johnson owes approximately $145,000 in federal student loan debt, which she has been paying for over 10 years without delinquency or default while pursuing PSLF. Plaintiff Johnson has remained in qualifying employment throughout the entirety of the relevant time period, and she has made regular monthly payments that qualify for PSLF. As of early June 2026, Plaintiff Johnson's PSLF tracker on

StudentAid.gov reflected that she had made 118 out of 120 payments, that she would make her 120th payment in late July, and that forgiveness was expected in August 2026. However, at some point thereafter, Plaintiff Johnson's payment count was adjusted down and, as of September 2026, reflects only 116 qualifying payments. The Department has unlawfully removed qualifying months to which Plaintiff Johnson is entitled. The Department has also failed to post Plaintiff Johnson's qualifying payments for August 2026 and October 2026. The Department is withholding Plaintiff Johnson's statutory right to cancellation through PSLF. Plaintiff Johnson is a member of AFT.

27. Plaintiff Elizabeth Schoepflin is a natural person who resides in Massapequa, New York. Plaintiff Schoepflin owes approximately $43,000 in federal student loan debt, which she has been paying for over 10 years without delinquency or default while pursuing PSLF. Plaintiff Schoepflin had accrued 119 of the 120 necessary qualifying payments for PSLF, and was on track to reach 120 by April 2026. In August 2026, Plaintiff Schoepflin received a notice that the Department had removed 14 qualifying months to which she is entitled. The Department is withholding Plaintiff Schoepflin's statutory right to cancellation through PSLF. Plaintiff Schoepflin is a member of AFT.

28. Plaintiff Carly Baetz is a natural person who resides in Chicago, Illinois. Plaintiff Baetz owes approximately $84,000 in federal student loan debt, which she has been paying for over 10 years without delinquency or default while pursuing PSLF. By June 2026, Plaintiff Baetz's PSLF tracker on StudentAid.gov reflected that she had accrued 118 of the 120 necessary qualifying payments for PSLF on some of her loans, and she was on track to reach 120 payments on those loans by August 2026. As of the date of this complaint, the Department has not posted Plaintiff Baetz's payments for July, August, September, or October 2026. By failing to post the remaining two months that Plaintiff Baetz needs for loan cancellation, the Department is withholding Plaintiff

Baetz's statutory right to cancellation through PSLF. Plaintiff Baetz is a member of AFT.

29. Plaintiff Stephanie Costa is a natural person who resides in Ardsley, New York. Plaintiff Costa owes approximately $156,000 in federal student loan debt, which she has been paying for 10 years without delinquency or default while pursuing PSLF. By July 2024, Plaintiff Costa's PSLF tracker on StudentAid.gov reflected that she had accrued 93 of the 120 necessary qualifying payments for PSLF, and she was on track to reach 120 payments for her loans by October 2026. The Department placed Plaintiff Costa's loans into an involuntary forbearance in August 2024, during which time she was unable to accrue more credit toward PSLF. In June 2025, Plaintiff Costa exited the forbearance and resumed making PSLF-qualifying payments. As of the date of this complaint, the Department has not posted Plaintiff Costa's payments for July, August, September, or October 2026. By refusing to post these months for which Plaintiff Costa needs credit to submit a successful PSLF Buyback application, the Department is withholding Plaintiff Costa's statutory right to cancellation through PSLF.

30. Defendant United States Department of Education is a federal agency with its principal place of business at 400 Maryland Avenue SW, Washington, D.C. Defendant is responsible for administering federal student loan and grant programs in the United States.

31. Defendant Linda McMahon is the Secretary of Education (Secretary). Plaintiff sues Secretary McMahon in her official capacity. Secretary McMahon is charged with the supervision and management of all decisions and actions of the United States Department of Education, and so all allegations in this complaint against the Department of Education are made against her.

## FACTUAL ALLEGATIONS

### I. Congress Created the Public Service Loan Forgiveness Program to Encourage Careers in Public Service and Help Public Service Workers Manage Their Student

**Loan Debt**

32. In 2007, to address a growing shortage of workers in public service jobs, which covers a broad spectrum of employment from nurses and teachers to firefighters and police officers, Congress passed with bipartisan support the College Cost Reduction and Access Act (the Act), which, among other things, created the PSLF program. *See* Pub. L. 110-84, 121 Stat. 784 (2007). President George W. Bush signed the Act into law on September 27, 2007.

33. Many public service jobs require a postsecondary degree, which has become more and more expensive in recent decades due to ever-increasing tuition costs. However, public service salaries are not commensurate with salaries in the private sector. This mismatch has resulted in generations of highly qualified but lower-salaried public service workers drowning in student loan debt or exiting public service.

34. Congress's offer to these public service workers was simple: work for a qualifying public service employer for ten years—making qualifying payments on qualifying federal student loans for the duration—and, after the 120th qualifying payment, the Secretary of Education would forgive any remaining federal student loan debt.

35. But PSLF is not just an offer to highly educated and well-trained borrowers working in public service; it is a mandate for the Department: the Act provides that the Secretary of Education "*shall* cancel the balance of interest and principal due . . . on any eligible Federal Direct Loan" for a borrower who "has made 120" eligible "monthly payments on the eligible Federal Direct Loan after October 1, 2007" and "has been employed in a public service job during the period in which the borrower ma[de] each of the 120 payments." 20 U.S.C. § 1087e(m)(1) (emphasis added).

36. Following the creation of the PSLF statutory program, the Department issued

regulations implementing the program. *See* 34 C.F.R. § 685.219; *Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program*, 73 Fed. Reg. 63232 (Oct. 23, 2008).

37. The PSLF program requires, in relevant part, that public service workers seeking debt forgiveness make 120 payments (10 years' worth) pursuant to a PSLF-eligible repayment plan. 34 C.F.R. §§ 685.219(b)(28), 685.219(c)(2)(i). For most borrowers, this means one of the Income-Driven Repayment (IDR) plans.

38. Notably, at the time, any month spent in a deferment or forbearance did not qualify as a qualifying payment towards PSLF.

## II. The Department Amended the PSLF Regulations in 2022 and Created the PSLF Buyback Opportunity

39. On November 1, 2022, the Department amended the PSLF rules. *Institutional Eligibility Under the Higher Education Act of 1965, as Amended; Student Assistance General Provisions; Federal Perkins Loan Program; Federal Family Education Loan Program; and William D. Ford Federal Direct Loan Program*, 87 Fed. Reg. 65904 (Nov. 1, 2022).

40. The Department accomplished several things in this rulemaking, including creating opportunities for borrowers to earn PSLF credit for months during which they worked for a qualifying employer but were in a forbearance or deferment. The Department did this in two ways.

41. First, the Department expanded the types of deferment and forbearance that conferred qualifying payment status. In doing so, the Department explained that borrowers have a statutory right to these periods of nonpayment, and that nothing in the legislative history indicates that Congress intended borrowers to have to give up that right to deferment or forbearance to

qualify for PSLF. *See id. at* 65975.[1]

42. Second, the Department created a "hold harmless" provision to "allow borrowers who have been encouraged and placed in forbearance for long periods of time to make payments equal to or greater that what they would have paid in order to count that time spent in forbearance as time toward forgiveness." *Id.* This provision is known as PSLF Buyback. *See Public Service Loan Forgiveness (PSLF) Buyback*, Federal Student Aid, U.S. Department of Education, https://studentaid.gov/manage-loans/forgiveness-cancellation/public-service/public-service-loan-forgiveness-buyback.

43. PSLF Buyback allows borrowers who would have satisfied PSLF's 120 qualifying payment requirement if not for months spent in deferment or forbearance to "buy back" those lost months, making payments *now* to cover previous unpaid months so that those months count toward PSLF.

44. A borrower can only qualify for a buyback when the recouped months would bring the borrower's total to or beyond the 120-month threshold for forgiveness. For example, a borrower who spent five months in a non-qualifying forbearance in the course of 10 years while maintaining qualifying public service employment would be eligible to apply for a buyback and claim those five months once the borrower has made 115 other qualifying payments, i.e., 115 months in which the borrower made payments on eligible plans or was in eligible deferments or forbearances all while maintaining eligible employment.

[1] The new regulation would not count all deferment or forbearance types as qualifying. The Department explained that the periods of deferment or forbearance it included are proxies for periods during which a borrower would be likely to maintain qualifying employment or to owe only a $0 payment under an IDR plan. 87 Fed. Reg. 65975. For example, the Department did not choose to include Unemployment Deferment as a qualifying deferment because that would be inconsistent with another requirement of the PSLF program: that borrowers maintain qualifying employment. *Id.*

45. For any past month to qualify for a buyback, the borrower must have maintained qualifying employment during that month, and must have already submitted a form to the Department certifying their employment for that month.

46. To obtain a buyback, a borrower must submit a "PSLF Reconsideration" request to the Department's Office of Federal Student Aid. Upon information and belief, the submission process has changed over time, but currently borrowers may only submit a PSLF Reconsideration request for a buyback once they have already 120 months of eligible employment.

47. Upon information and relief, once a PSLF Reconsideration request is submitted, the Department or its contractors review the borrower's account and, if the borrower is eligible for a buyback—i.e., they have sufficient months of previous deferment or forbearance time corresponding with qualifying employment to bring their total PSLF credit to at least 120—the Department or one of its contracted student loan servicers will send the borrower a buyback agreement. The agreement specifies which loan(s) are covered by the agreement and includes a table listing each month that the borrower can buy back pursuant to the agreement, an outstanding payment amount and applicable repayment plan for each month listed, and a total outstanding payment amount.

48. To accept the buyback, the borrower must pay the total outstanding payment amount of the bought-back months within 90 days of the date on the buyback agreement. The payment may be made in installments, but if the borrower does not timely submit the entire amount, the Department voids the buyback agreement.

49. The Department requires borrowers to continue making scheduled payments throughout the buyback process, including the time during which a borrower's application is

pending and the 90-day post-approval payment period.[2]

## III. The Department Forces Millions of Borrowers Into A Special Forbearance, Denying Them Credit Toward PSLF

50. On July 10, 2023, the Department issued a final rule (the Rule) to improve one of its IDR plans, the Revised Pay As You Earn (REPAYE) plan.

51. In the Rule, the Department renamed REPAYE as Saving on a Valuable Education, or SAVE, and made changes so that SAVE would be the most affordable option for the majority of federal student loan borrowers. *See Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program*, 88 Fed. Reg. 43,820 (July 10, 2023).

52. Because SAVE was an IDR plan, payments made on SAVE would count as qualifying payments for PSLF.

53. Millions of student loan borrowers, including thousands of public service workers, enrolled in SAVE in 2023 and the first half of 2024.

54. Even though SAVE was designed to—and, indeed, *did*—help millions of borrowers save money, in April 2024, a group of states sued the Department to challenge the Rule in the U.S. District Court for the Eastern District of Missouri. As relevant here, on June 24, 2024, the U.S. District Court for the Eastern District of Missouri preliminarily enjoined the Department from

[2] The Department states that any over-payments—i.e., payments that ultimately result in a borrower making *more* than 120 qualifying payments—will be refunded to the borrowers after their loans are forgiven through PSLF. But, given that a borrower must have reached 120 months of qualifying employment to receive a buyback, *any* post-application payment made by a borrower who qualifies for PSLF Buyback will necessarily be an overpayment, requiring further processing by the Department and additional waiting by borrowers.

providing loan forgiveness under the Rule and, on July 18, 2024, the Eighth Circuit Court of Appeals imposed an administrative stay prohibiting the Department from implementing the Rule.[3]

55. As a result of this litigation, in or around June 2024, and without obtaining borrower consent, the Department placed the nearly 8 million student loan borrowers enrolled in SAVE in a new type of forbearance: the SAVE Forbearance.

56. Borrowers had no control over being moved into the forbearance and could not opt out of being placed in the forbearance.

57. Although the Department decided that months spent in the SAVE Forbearance were *not* qualifying months for the purposes of IDR forgiveness or PSLF, it subsequently clarified, in a filing with this Court, that months spent in the SAVE Forbearance are eligible to be recouped through the PSLF Buyback. *See Def's Status Report* 12, Case No. 1:25-cv-00802-RBW, ECF No. 36.[4]

58. Beginning in July 2026, the Department began to send borrowers in the SAVE Forbearance notices that they have 90 days to apply for a different repayment plan. Borrowers who do not select a plan will be enrolled in a fixed-payment repayment plan, regardless of their ability to afford the new monthly payments.

---

[3] For complete procedural history, see State of Missouri v. Trump, 4:24-cv-00520, (E.D. Mo.).

[4] Although borrowers in the SAVE Forbearance technically could have requested to switch to another IDR plan in order to continue making PSLF-qualifying payments, the Department made this practically impossible. First, in February 2025, the Department instructed servicers to stop accepting and processing IDR applications. Plaintiff AFT sued the Department, and shortly thereafter the Department resumed accepting and processing IDR applications. Second, as a result of Plaintiff AFT's suit, the Department revealed that there was a processing backlog exceeding 1.6 million IDR applications in April 2025 and that it was processing fewer than 100,000 applications a month at that. *See generally* American Federation of Teachers v. U.S. Department of Education, 1:25-cv-00802-RBW, (D.D.C.). As of the most recent publicly available data, there were 530,295 IDR applications pending as of April 30, 2026. *Id.* at ECF No. 65. Borrowers who wanted to switch plans therefore have not been able to do so immediately, and are being deprived by the Department of their right to make PSLF-qualifying payments.

## IV. Borrowers Seek PSLF Credit for Their Forced Forbearance Through the Buyback Program, But the Department Withholds and Delays Determinations

59. Borrowers pursuing PSLF who had been trapped in the SAVE Forbearance were not out of options, thanks to the 2022 PSLF Rulemaking that introduced PSLF Buyback (supra Section II).

60. But, despite the purported availability of PSLF Buyback, the Department is withholding borrowers' statutory rights under the PSLF program by effectively withholding their procedural rights to a buyback under the 2022 amended regulations.

61. Status reports filed by the Department in the above-referenced action revealed a massive PSLF Buyback application backlog that grew, month after month.

62. Between April 2025 and March 2026, the number of pending PSLF Buyback applications nearly doubled, from 49,318 to 89,720. During that time, the Department decided (i.e., approved or denied) approximately 1,472 buyback requests per month. *See id.* at ECF Nos. 36-39, 42, 58, 61-63. In April 2026, the Department received 4,790 buyback requests and decided 6,870 buyback requests, marking the very first time during this public reporting that it processed more requests than it received in a month. However, as of April 30, 2026, the backlog still included 88,000 pending buyback requests. *Id.* at ECF 65.

63. Even if the Department received no additional applications *and* worked at the fastest processing rate it demonstrated during the reporting period, it would still take the Department over 18 months to clear the 88,000 application backlog that existed as of April 30, 2026. However, the Department has likely received new PSLF Buyback applications—each month, more borrowers reach 120 months of qualifying employment

and so must buy back time to qualify for PSLF cancellation—which is further extending the Department's processing time.

64. There is no reason for the Department to process these requests at a snail's pace. Each buyback request requires only that the Department determine whether the applicant has the correct number of months to qualify PSLF but for the addition of the bought-back months and then calculate the total cost of the months that the applicant wants to buy back. This task is ministerial and does not require any discretionary action.

65. Upon information and belief, buyback requests are not processed in the order they are received, nor is the order in which they are processed governed by any consistent logic or rule of reason.

66. Buyback applicants are waiting for many months—with some borrowers waiting for two years or more—for the Department to process these relatively simple requests.

67. Plaintiff Lozada is one such buyback applicant. He has spent his entire career as a government lawyer at various state and country agencies in Florida, and has worked over 12 years in qualifying employment for PSLF. After being involuntarily placed in the SAVE Forbearance, he filed a PSLF Buyback application on or around November 26, 2024, and received the confirmation number 23996013. He needs to buy back just four months spent in the SAVE Forbearance to qualify to have all of his student loans forgiven through PSLF. Six months later, he had not received any update about his application, and so submitted a second one on or around May 21, 2025, which was assigned the confirmation number 29216169. In June 2026, Plaintiff Lozada received a notice from the

Department that his second application was closed as duplicative. He has still not received an update or determination on his November 2024 application, nearly 24 months later.

68. Plaintiff Allen is an assistant professor at a public university in New York, with nearly 12 years of qualifying public service employment. She also filed a PSLF Buyback application to buy back months from the SAVE Forbearance. She submitted her application in or around November 2025, and received the confirmation number 32298256. Plaintiff Allen needs to buy back just five months from her involuntary forbearance to qualify to have her loans cancelled through PSLF. After nearly 12 months she has not received an update or determination on her application.

69. Plaintiff Petley is a critical care pharmacist at a rural nonprofit community hospital, with over 11 years of qualifying public service employment. He also filed two PSLF Buyback applications to buy back months from the SAVE Forbearance. He submitted these applications on or about May 1, 2025, and received the confirmation numbers 28830739 and 28855235. Plaintiff Petley needs to buy back eight months from his involuntary forbearance to qualify to have his loans cancelled through PSLF. After about 18 months, he has not received an update or determination on his application. He has even enlisted the help of his member of congress to seek an update from the Department, but the Department will only confirm that at least one application was received and is pending.

70. Plaintiff Jessel worked for several nonprofits and community organizations for over a decade, all of which qualify her for PSLF. She also filed a PSLF Buyback application to buy back months from the SAVE Forbearance. She submitted her application on or about July 1, 2025, and received the confirmation number 29917390. Plaintiff Jessel

needs to buy back ten months from her involuntary forbearance to qualify to have her loans cancelled through PSLF. Although she received a confirmation number, she could find no evidence of her application on her StudentAid.gov account, and so submitted a second application in or around October 2025. In June 2026 she received a notice that her second application was closed as duplicative. After 15 months, she has not received an update or determination on her application.

71. Plaintiff Watts is a nurse at the Ohio State University Medical Center, with over ten years of qualifying public service employment. He also filed a PSLF Buyback application to buy back months from the SAVE Forbearance. He submitted his application on or about March 18, 2026, and received the confirmation number 33982220. Plaintiff Watts needs to buy back 22 months from his involuntary forbearance to qualify to have his loans cancelled through PSLF. After seven months he has not received an update or determination on his application.

72. The Department is withholding determination of buyback applications from AFT members across the country.

73. AFT member Billie is a public school teacher in New Mexico. She has spent the last thirteen years, including the entirety of her PSLF repayment term, working as a teacher in the same public school district. Billie met all her obligations under PSLF over the last 13 years, except that her loans were in forbearance for a period of time; she submitted her PSLF buyback application in July 2026, receiving the confirmation number 35961354, to recoup that time. Billie has been waiting for over 90 days for the Department to process her buyback application to no avail. She continues to make regular monthly

payments, which will eventually render her buyback application moot, out of concern that her application will not be timely processed.

74. When Congress created PSLF and required borrowers to work for 120 months to earn loan cancellation, it did not intend for borrowers to have to wait an additional 12 to 24 months for the Department to process their cancellation.

75. Although borrowers could negate the need for the buyback process by making the necessary number of missing qualifying payments going forward, because the Department has stopped crediting borrowers for recent payments, *see infra* Section VI, borrowers have no assurance that those future qualifying payments will help them reach the necessary 120 month requirement. Even if they could confidently make more qualifying payments, however, that would result in borrowers working more than the 120 months in public service that Congress intended when it created PSLF before receiving the benefit of debt cancellation, and, for some borrowers, it would result in more expensive payments than they are entitled to under the buyback process.

76. Although the Department is withholding determination of many borrowers' buyback applications, including Named Plaintiffs', other borrowers have received buyback agreements and have had their loans cancelled upon payment of the agreement amount.

77. Upon information and belief, some of these borrowers' applications were processed within only a few months.

78. Upon information and belief, these borrowers' applications were not processed in the order in which they were received.

79. Upon information and belief, the order in which the Department is processing applications is not governed by logic or reason.

## V. The Department Clawed Back PSLF Credits to Which Borrowers are Entitled

80. Beginning in August 2026, the Department announced that it would be correcting the counts of PSLF-qualifying months listed on borrowers' online accounts. According to the Department, these corrections were necessary due to "coding errors," but the Department did not explain the nature, timing, cause, or effect of these so-called "coding errors."

81. More borrowers have since received so-called "Qualifying Payment Reduction Update" notices, indicating the Department is permanently reducing borrowers' PSLF-qualifying payment counts.

82. These months were considered qualifying payments at the time that they were awarded, and the Department's clawback of these months is unjustified and unauthorized.

83. Upon information and belief, the PSLF credit clawbacks have affected thousands, if not tens of thousands, of borrowers.

84. Plaintiff Johnson is one such borrower. After obtaining a doctorate in education to further her career, Plaintiff Johnson returned to employment in public education and began repaying her federal student loan debt in February 2016. Plaintiff Johnson remained in public service throughout the duration of her loan repayment term, making regular monthly payments; she originally anticipated making her 120th payment, and thus qualifying for PSLF loan cancellation, in January 2026, but an involuntary forbearance delayed the presumptive date of her 120th payment to July 2026.

85. In or about June 2026, Plaintiff Johnson logged into her StudentAid.gov account and noted that she had obtained 118 qualifying payments toward PSLF. Per the

information provided by the Department, Plaintiff Johnson was on track to make her 120th payment in late July 2026 and become eligible for PSLF cancellation as of August 2026.

86. Shortly after confirming her payment count in or about June 2026, Plaintiff Johnson logged into her StudentAid.gov account again and saw that her payment count had changed: it had been reduced from 118 qualifying payments to 114 qualifying payments. The Department had removed four qualifying payments for months during which Plaintiff Johnson made the same payment in the same method while working in qualifying employment as she had for the 114 months that remained on her account.

87. Plaintiff Johnson has contacted her servicer and the Department repeatedly, seeking restoration of the four months that would put her payment count at 120—to no avail. The Department refuses to restore these qualifying payments to Plaintiff Johnson's account.

88. Plaintiff Schoepflin has also had qualifying payments removed from her account. She has worked as a speech language pathologist in her local school district for 16 years. During that time, she dutifully made payments under qualifying payment plans. On or around May 4, 2026, Plaintiff Schoepflin received a notice from Federal Student Aid which stated that she had 119 of the 120 qualifying payments necessary for loan cancellation under PSLF. She had made her 120th qualifying payment in April 2026, and had promptly submitted her final employment certification form. She was accustomed to delays by the Department and so was not alarmed when her counter was not updated or loans were not immediately cancelled. She continued to make monthly payments while she waited, as instructed by her loan servicer.

89. However, on or around August 4, 2026, Plaintiff Schoepflin received a notice from the Department stating that her PSLF credits were being reduced by 14 months, from February 2025 to April 2026, months which had previously counted as qualifying payments. The notice did not provide any explanation for the reduction and instructed Plaintiff Schoepflin to contact her student loan servicer for more information. According to the notice, as of August 2026, her PSLF credits had been reduced to 105 months, meaning she would need 15 more months of qualifying payments and employment to have her loans cancelled.

90. For the months that the Department clawed back, Plaintiff Schoepflin had maintained the same employment and made payments pursuant to the same PSLF-qualifying Income-Contingent Repayment plan on which she had been previously making payments and on which she has since made payments. The Department's notices did not explain why some but not all of these identical payments were suddenly no longer considered qualifying. Plaintiff Schoepflin did contact her assigned student loan servicer for more information; her servicer confirmed that there were no changes to her account that would explain the Department's clawback, and could not tell her why the Department took away the qualifying months.

91. Plaintiff Schoepflin submitted several complaints to Federal Student Aid, seeking an explanation and for these months of PSLF credit to be restored so that her loans could be cancelled. Her complaints were closed without explanation.

92. Plaintiff Schoepflin contacted her local U.S. Representative about the clawback, who reached out to the Department on her behalf. The Department responded, replying that the clawback was to correct a "counter code error" stemming from May 2024.

The response failed to address her actual circumstances, as the months the Department clawed back were from 2025 and 2026, not 2024, and were months during which she was engaged in the same employment and enrolled in the same payment plan as months for which the Department is correctly awarding her PSLF qualifying payments.

93. Because Plaintiff Schoepflin has continued to make payments, her account on StudentAid.gov currently shows she has 106 qualifying payments. This means that, but for the 14 clawed back months, she would have reached the 120 qualifying payments necessary for her loans to be cancelled under PSLF. To date, the Department has refused to correct Plaintiff Schoepflin's account and cancel her loans.

94. The Department has also clawed back months from other AFT members. Donald K. is a retired public transit worker in Chicago. Despite wanting to retire sooner so that he could take care of his wife, he continued to work in order to benefit from PSLF. On or around November 9, 2025, the Department sent Donald a notice that stated he had satisfied the requirements to have his loans forgiven. The next month his StudentAid.gov account displayed a banner that said "Congratulations! You've satisfied your obligation, and no additional payments are required for this loan" and showed "120 Qualifying Payments (0 remaining)" on his account. However, later in December 2025, the Department changed its tune, revising the banner on his account to say "You've reached 120 payments, but you may need to meet other program requirements," and requesting additional information. The end result of this process was that in January 2026, Donald received a rejection notice, denying him loan forgiveness. The notice specified that two previous months—during which Donald made the same payments he had always made—

would not count. Despite having previously told Donald that these months count, the Department clawed them back and refused to forgive his loans.

95. Upon information and belief, the Department has clawed different months back from different borrowers.

## VI. The Department is Withholding Recently Earned Months of PSLF-Qualifying Payments

96. The Department has stopped updating the qualifying-payment count for at least some borrowers seeking PSLF.

97. Each borrower's account on StudentAid.gov includes a tracker listing the borrower's PSLF progress. This dashboard includes a list of every past payment period with an indication of whether the payment for that period was Qualifying (marked in green) or Ineligible (marked in red) for PSLF. Typically, each payment period is added promptly once the period closes.

98. For most borrowers, the StudentAid.gov PSLF tracker is the only way they know the Department's accounting of their PSLF credits.

99. Beginning with the July 2026 payment period, the Department has stopped adding new payment periods to the online tracker on StudentAid.gov for some borrowers.

100. Without an up-to-date tracker, borrowers cannot know whether the Department is crediting their accounts accurately for payments that should count toward PSLF under statute and regulation. The Department's failure to update the tracker impedes borrowers' cancellation rights in two ways.

101. First, if borrowers do not know when they have made their 120th qualifying payment, they cannot know when to certify their employment. Any payment made while

on an IDR plan is an "eligible payment;" the Department knows borrowers' payment histories and so can determine eligible payments without borrower input. An eligible payment made while in qualifying employment is a "qualifying payment," which confers credit toward PSLF cancellation. The Department relies on borrowers to inform it of their qualifying employment by submitting employer-signed forms documenting past months of work. When borrowers certify employment during the month in which they make their 120th payment, they also indicate to the Department that they believe they are eligible for cancellation. Without knowing whether the Department recognizes their 120th payments, borrowers cannot certify their corresponding work and signal their eligibility for cancellation. By withholding these PSLF qualifying payments, the Department is thereby withholding borrowers' statutory and regulatory rights to debt cancellation under PSLF.

102. Second, without an up-to-date tracker, borrowers who are relying on the PSLF Buyback process to reach 120 qualifying months are left unsure as to whether or not to apply. As described above, borrowers are only eligible to submit a buyback application when their current qualifying payment count and the number of months they seek to buy back equal 120 months or more.

103. For example, a borrower who has switched out of the SAVE Forbearance after five months and expects to make her 115th qualifying payment in September 2026, after which she will file a buyback application to recoup those five SAVE Forbearance months, must wait for her PSLF tracker to reflect 115 months before she submits an application. If July, August, and September 2026 do not post, her tracker will only reflect 112 months. Her PSLF Buyback eligibility is being withheld as long as those three months' statuses are withheld.

104. These situations are not hypothetical.

105. Plaintiff Baetz has accumulated 118 months of PSLF-qualifying payments as of June 2026. She has continued to work in qualifying employment and continued to make qualifying payments, but the Department has not posted her payments for July, August, September, or October 2026 to her PSLF tracker, meaning she cannot submit her final application for loan cancellation under PSLF. She has surpassed 120 payments, but she continues to make payments as of the date of this filing—payments that are not required of her by law on loans that should have already qualified for forgiveness.

106. Plaintiff Costa has accumulated 108 months of PSLF-qualifying payments as of June 2026 and has made four more payments in July, August, September, and October 2026. She intends to buy back eight months from her involuntary time in the SAVE Forbearance, meaning she should be eligible to submit a buyback application as of October 2026. She has continued to work in qualifying employment and has continued to make qualifying payments, but the Department has not posted her payments for July, August, September, or October 2026 to her PSLF tracker. Without these months, Plaintiff Costa does not meet the Department's stated requirements for PSLF Buyback, which is that the bought-back months are the final months needed to reach 120 qualifying months.

107. The Department is withholding recent qualifying payments from AFT members across the country.

108. Alison S., a middle school teacher in New York City and AFT member, has been teaching for 13 years and has over $100,000 in federal student loans. She has accumulated 119 months of PSLF-qualifying payments as of June 2026. She has continued to work in qualifying employment and continued to make qualifying payments, but the

Department has not posted her payments for July, August, September, or October 2026 to her PSLF tracker. She has surpassed 120 payments, but the Department is not crediting her for her final payments, or cancelling her loans as required by law.

109. By withholding borrowers' PSLF-qualifying payments, the Department is preventing borrowers from qualifying for the PSLF Buyback process, and is thereby withholding their statutory and regulatory rights to debt cancellation under PSLF.

110. Although borrowers could compensate for these withheld months by making the necessary number of missing qualifying payments going forward, they have no assurance that those future qualifying payments will not also be withheld. Even if they could confidently make more qualifying payments, however, that would result in borrowers working more than the 120 months in public service that Congress intended when it created PSLF before receiving the benefit of debt cancellation.

111. Upon information and belief, the PSLF tracker typically updates monthly and the Department has made a recent and an affirmative decision to withhold these payments.

## VII. The Department's Actions and Inactions Harm Plaintiffs, Including AFT, Its Members, and Named Plaintiffs

112. The Department's withholding and delay of PSLF Buyback determinations and subsequent loan cancellations, its clawback of PSLF credits and extension of time before borrowers qualify for loan cancellations, and its failure to post borrowers' qualifying payments to their PSLF trackers, subsequently withholding of loan cancellations, is actively harming borrowers.

***PSLF Buyback Processing Delays***

113. The Department's protracted refusal to process PSLF Buyback applications has caused and continues to cause harm to Named Plaintiffs, AFT members pursuing loan cancellation through PSLF, to AFT itself, and all other similarly situated borrowers.

114. Plaintiff Lozada has spent the entirety of his legal career as a public service worker, including over a decade as a lawyer for state government entities. He has dutifully made student loan payments throughout the duration of his repayment period. He and his wife, also a public service worker, have planned a financial future for themselves and their children in anticipation of PSLF cancellation after 120 qualifying payments. Indeed, Plaintiff Lozada decided to attend law school and work in government roles, rather than seek higher paying jobs in the private sector, specifically because of the promise of debt cancellation under PSLF. As of the date of filing, Plaintiff Lozada's PSLF Buyback application has been pending for approximately two years with no action by the Department. Plaintiff Lozada is currently in a forbearance and has not resumed making payments. If he were to leave the current forbearance and resume monthly payments, his monthly payment amount would be at least $1,300 per month, and could be over $2,000 per month, depending on which repayment plan he chooses. The monthly payment amount he would be responsible for through a buyback is based on what he would have had to pay in the past, and would be much lower than his payments today, likely by hundreds of dollars less per month. If he resumes payment and abandons the buyback process, he will be required to pay, at minimum, $5,200 for the same number of months that would have likely cost less than $4,000 under a buyback agreement.

115. Plaintiff Petley is a pharmacist at a hospital in rural Oregon, where he has worked for the entirety of his PSLF period. As the bipartisan congress that enacted the

PSLF legislation intended, PSLF influenced Plaintiff Petley to take a lower-paying job at a non-profit hospital instead of a higher-paying job in the private sector. He is and has been honored to serve his community and provide crucial medical services to his neighbors and community members. Plaintiff Petley took on considerable debt to obtain his pharmacy degree, and he and his wife have planned a financial future for themselves and their children that relies on the Department to provide PSLF cancellation after 120 qualifying payments. After almost 18 months of waiting for the Department to process his buyback application, Plaintiff Petley has been forced to resume repayments at a much higher monthly amount: his new monthly payment amount, beginning in November 2026, is $2,943.25. The monthly payment amount he would be responsible for through a buyback would be much lower, likely hundreds if not over a thousand dollars less per month. If he resumes payment and abandons the buyback process, he will be required to pay about $23,500 for the same number of months that would, on information and belief, cost less than $15,000 under the Buyback agreement.

116. Plaintiff Allen is a college professor based in Catskill, New York. She has spent over ten years—the entirety of her PSLF repayment period—as a professor at a public research university. She has dutifully made student loan payments throughout this repayment period, but the Department has delayed in processing her PSLF Buyback application for a year. Plaintiff Allen cannot make plans for her future or her career without knowing when or whether she will receive the loan cancellation to which she is legally entitled. After a year of waiting for the Department to process her buyback application, Plaintiff Allen was forced out of the mandatory SAVE Forbearance and now must resume making payments: her new monthly payment amount, beginning in November 2026, is

$883.08. The monthly payment amount she would be responsible for through a buyback would be much lower, likely hundreds of dollars less per month. That means that, if she abandons the buyback process and makes five additional payments, she will be required to pay approximately $4,400 for the same number of months that would have likely cost $2,300 or less under the buyback agreement.

117. Plaintiff Jessel is a stay-at-home parent based in Pittsburgh, Pennsylvania. She spent over ten years working in various non-profit organizations before stepping back from the workforce to provide care for her young child. She dutifully made student loan payments throughout her repayment period, but the Department has delayed in processing her PSLF Buyback application for 15 months. Plaintiff Jessel cannot make financial plans for her future or her family without knowing when or whether she will receive the loan cancellation to which she is legally entitled. The Department's failure to process Plaintiff Jessel's application and cancel her loans puts her in a bind: if she returns to public service to make ten additional payments at a qualifying employer, the relatively lower public service salary, additional monthly payments, and cost of childcare will put a financial strain on her family; if she returns to work in the private sector, she may be able to afford her monthly payments and childcare, but would be making payments on a loan that should legally have been cancelled.

118. Plaintiff Watts is a nurse in Ohio. He has spent the last ten years, the entirety of his PSLF repayment term, working as a nurse at the same PSLF-eligible hospital. His $0 monthly loan payment under the SAVE plan was hugely helpful as he and his wife made financial plans for themselves and their three children. Plaintiff Watts met his obligations under PSLF over the last 10 years, and he submitted his PSLF Buyback application in

March 2026. After seven months of waiting for the Department to process his buyback application, Plaintiff Watts is being forced out of forbearance and into repayment: his new repayment amount, beginning in October 2026, would be approximately $700, whereas his monthly payment amounts during the months he seeks to buy back was less than $400. That means that, if he resumes payment and abandons the buyback process, he will be required to pay approximately $14,700 for the same number of months that would have likely cost $8,400 or less under the buyback agreement. This massive unnecessary expense will cause serious financial difficulties for Plaintiff Watts and his family, who are already struggling with the increased costs of groceries, gas, and housing.

119. Non-plaintiff AFT members have also suffered due to the Department's refusal to process their PSLF buyback applications.

120. AFT member Billie, the public school teacher in New Mexico, is seeking to buy back 10 qualifying months after having spent the past 13 years as a teacher in the same school district. Having held up her side of the PSLF bargain by spending more than a decade in public service, she now asks the Department to do what they promised and forgive the remainder of her loans. Billie continues to submit payments every month out of concern that, if she stops, her forgiveness will be delayed or will not be processed at all. Each monthly payment she continues to make on her loans—loans which legally should no longer exist—is money that she is not saving and investing in her future.

121. All borrowers for whom the Department has not processed their buyback applications are also injured by the mere fact that they are being kept in debt for longer than the law requires. This places a financial, professional, and emotional toll on these borrowers and their families.

***The Department's Clawback of PSLF Credits***

122. The Department's clawbacks of months already determined to be PSLF-qualifying have harmed Named Plaintiffs, AFT members pursuing loan cancellation through PSLF, to AFT itself, and all other similarly situated borrowers.

123. Plaintiff Johnson has spent over a decade in public service in public school districts in California. She has made regular payments and she is entitled to PSLF credit for the months that she has spent in eligible employment. Despite this, the Department has clawed back four months of qualifying payments from her account. Plaintiff Johnson's current monthly payment amount is $949.38. If she is required to make four additional payments to cover the months that the Department unlawfully clawed back from her, she will have to spend $4,746.90 that, absent the clawbacks, would not have been necessary to reach 120 payments. In addition to the monetary cost of these clawbacks, Plaintiff Johnson is enduring the psychological stress and frustration of, after holding up her end of the PSLF bargain, finding herself subjected to insurmountable obstacles and unpredictable delays in obtaining her PSLF loan cancellation.

124. Plaintiff Schoepflin has had to make monthly payments beyond those required by law. Her 120th payment was in April 2026, but the Department has refused to cancel her loans and instead claims she must continue to make an additional 14 qualifying payments in order to benefit from PSLF. This is 14 more than Congress required when it created PSLF. Because her student loan servicer told her that overpayments will eventually be reimbursed, Plaintiff Schoepflin has continued to make monthly payments on her IDR plan while she tries to address the Department's actions, for fear of becoming delinquent or defaulting on her loans. Her monthly IDR payments were in excess of $700, and only

recently lowered to approximately $479 after completing her IDR recertification. If she is required to make 14 additional payments to cover the months that the Department unlawfully clawed back from her, she will have to spend $6,706 that, absent the clawbacks, would not have been necessary to reach 120 payments. Continuing to make these monthly payments beyond when she should have to under PSLF places an enormous financial burden on her and her family. She cannot save for her children's college educations while continuing to pay off her own education and has put off necessary home repairs. Being free from her student loans, as Congress intended her to be, would be life-changing. The Department's actions are breaking Congress's promise.

125. Donald K., the AFT member in Chicago, is stuck with approximately $60,000 in federal student loan debt that should have been forgiven. Based on the Department's original message that, "Congratulations," his loans would be forgiven, he finally retired to focus on caring for his wife, who has serious health issues. The Department is now requiring him to continue making monthly payments of approximately $683 on a loan that should no longer legally exist. He lives on a fixed income, and diverting those funds to his student loans and away from mounting household expenses and savings puts his wife and him in a financially precarious situation.

***The Department's Withholding of PSLF-Qualifying Payments***

126. The Department's withholding of PSLF-qualifying payments has harmed Named Plaintiffs, AFT members pursuing loan cancellation through PSLF, AFT itself, and all other similarly situated borrowers.

127. Plaintiff Baetz has spent the last three years as a professor of psychology, prior to which she worked as both a mental health clinician and a legal advocate for

traumatized and vulnerable children. She has dutifully and regularly made her student loan payments over the last ten years, and she thought that, by August 2026, she would be able to submit her final application for loan cancellation through PSLF for some of her loans. Instead, she finds herself caught in a holding pattern: the Department simply refuses to post credit for the recent months that she has spent in qualifying employment while making qualifying monthly payments. Each additional and unnecessary payment on those loans—loans which legally should no longer exist—is money that she is not saving and investing in her future. Having held up her end of the PSLF bargain, Plaintiff Baetz finds herself deprived of any recourse in obtaining the loan cancellation to which she is legally entitled.

128. Plaintiff Costa is a lawyer for a state government entity, prior to which she spent many years as a legal services attorney for low-income tenants. She has dutifully and regularly made her student loan payments over the last ten years. Despite the frustrations of the SAVE Forbearance, she thought that, by October 2026, she would be able to submit a PSLF Buyback application and be confident that the Department had correctly tracked and attributed her months in PSLF. Instead, she finds herself caught in a holding pattern: the Department has not updated her PSLF tracker to reflect her last four payments. Per the Department's own requirement that borrowers can only buy back months when those months are the final credits needed to reach 120 qualifying payments, the Department's failure to post Plaintiff Costa's recent payments prevents her from being eligible for a buyback agreement. Although she should not legally have to make additional payments, per the Department's instructions to borrowers, she is continuing to make monthly payments and plans to continue to do so, despite her concern that the Department will fail to credit her for any future payments, too. This uncertainty and the need to divert funds

from savings or investment to ongoing loan payments has prevented Plaintiff Costa and her family from making financial plans for their future, and Plaintiff Costa is deprived of the PSLF loan cancellation to which she is legally entitled.

129. Non-plaintiff AFT members have also suffered due to the Department's refusal to meet its obligations and provide credit for PSLF-qualifying months.

130. AFT member Alison, the New York City teacher, is frozen one month short of meeting the threshold for PSLF loan cancellation. Until the July 2026 payment is posted and marked as qualifying, Alison continues to submit payments every month out of concern that, if she stops, her forgiveness will be delayed or will not be processed at all. Each monthly payment she continues to make on her loans—loans which legally should no longer exist—is money that she is not saving and investing in her future.

131. The Department's actions and inactions harm all Plaintiffs.

132. By keeping PSLF Buyback applicants in limbo, the Department is withholding their statutory and regulatory right to loan cancellation, and in some instances causing them to make additional and unnecessary payments.

133. By clawing back payment credits that satisfied all statutory requirements for PSLF, the Department is extending the number of payments these borrowers must make to qualify for PSLF beyond 120.

134. By failing to post borrowers' qualifying payments to their accounts, the Department is both extending the number of payments these borrowers must make to qualify for PSLF beyond 120 and is preventing them from qualifying for the PSLF Buyback program and their right to debt cancellation under PSLF.

135. Each of the Department's actions and inactions will keep affected borrowers in debt for longer than they otherwise would have been. Their loans will continue to appear on their credit reports and are monthly expenses that inhibit their abilities to pay for basic necessities and to save for the future.

136. The Named Plaintiffs all have standing in their own right to sue, and their experiences are similar to those that other AFT members face.

137. AFT, however, is vindicating its members' interests because, as highlighted above, the issues are at the heart of AFT's purpose and affect its members, as described above.

138. No individual member of AFT is a necessary party in this case as the claims and relief sought are challenging an unlawful government policy that is being applied in the same manner as to all individuals.

139. The Department's actions are also harming AFT as an organization because its resources have been, and continue to be, diverted to address this unlawful conduct, which directly impedes its ability to develop and implement additional financial literacy, retirement planning, and other types of debt counseling, which are desperately needed now. It has had to increase its efforts to assist members with their student loans as a result of the Department's handling of the PSLF and PSLF Buyback programs, to the detriment of other work. AFT has had to build and execute dedicated "Navigating PSLF Buyback" debt clinics to help members seeking to buy back months. It has had to spend time and money expanding its casework capacity solely to accommodate increased cases stemming from buyback delays, diverting these resources away from other important work. Buyback casework requests have tripled in recent months as members' applications languish, and

the average buyback case now requires three to four hours of staff time, compared with one to two hours for other student loan matters. AFT has had to create a new staff position to address its members' new PSLF issues, mostly to accommodate this increase in casework demand, at an annual cost of approximately $150,000, as well as consultant time. AFT has had to expend resources on revision debt clinic curricula and on travel to staff in-person debt clinics across the country.

140. The Department is harming many borrowers in addition to Named Plaintiffs, AFT, and its members. Upon information and belief, thousands—if not tens of thousands—of public service workers seeking cancellation of their loans through PSLF are being harmed by the Department's failure to process buyback application, clawing back of qualifying months for PSLF, and failure to update qualifying payment trackers and give credit for qualifying months.

## CLASS ACTION ALLEGATIONS

141. Pursuant to Fed. R. Civ. P. 23(b)(2), Plaintiffs seek certification of the following classes:

> **PSLF Buyback Class**
> All borrowers who have satisfied the public service requirements of PSLF, and have submitted a PSLF Buyback application, but for whom the Department has not processed their PSLF Buyback applications within 90 days of filing the PSLF Buyback application.
>
> **PSLF Clawback Class**
> All borrowers from whom the Department removed qualifying payment credits for months that were considered qualifying payments at the time that they were awarded, and who would have reached the 120 qualifying payments required for loan cancellation under PSLF but for the removal of those months, and who should therefore qualify to have their loans cancelled.
>
> **PSLF Qualifying Payments Withholding Class**

> All borrowers for whom the Department has failed to credit their account for qualifying payments toward PSLF and for whom the withheld months would count either as their 120th months necessary for cancellation under PSLF or the months necessary to qualify for the PSLF Buyback process.

142. **Numerosity:** The Classes are sufficiently numerous. As of the most recent public reporting by the Department, there are 88,000 pending PSLF Buyback applications. The Department's claim that the clawbacks were the result of previous "coding errors" suggests that the issue was widespread, affecting thousands, if not tens of thousands, of borrowers. The failure to update PSLF-qualifying payments also appears to be a systemwide problem affecting thousands, if not tens of thousands of borrowers.

143. **Commonality:** There are numerous common questions of law and fact that can be answered with common evidence, including but not limited to:

a. Whether the Department's failure to process PSLF Buyback applications violations the Administrative Procedures Act;

b. Whether the Department's clawback of PSLF credits violates the Administrative Procedures Act;

c. Whether the Department's failure to update borrowers' accounts with qualifying payments violates the Administrative Procedures Act;

d. The proper scope of injunctive relief.

144. **Typicality and Adequacy:** Plaintiffs' claims and injuries are typical of those of the Classes. Plaintiffs and their counsel have no conflicts with the Classes and will adequately represent the Classes.

145. Certification is proper under Fed. R. Civ. P. 23(b)(2) because the Department of acted or refused to act on grounds that apply generally to the Classes, so

that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

*Unlawful Withholding of Agency Action in Violation of the Administrative Procedure Act, 5 U.S.C. § 706(1)*

(On behalf of all Plaintiffs, and the PSLF Buyback Class, the PSLF Clawback Class, and the PSLF Qualifying Payments Withholding Class)

146. Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

147. The APA authorizes this Court to "compel agency action" that has been "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

148. As alleged above, the Secretary has a mandatory statutory, regulatory, and contractual duty to cancel the outstanding loan balances for borrowers who satisfy the requirements of the PSLF program.

149. As alleged above, the Secretary has promulgated rules for the PSLF Buyback program, which allows borrowers to complete their final PSLF-qualifying payments by recouping previously ineligible months.

150. As alleged above, the Secretary has a mandatory statutory, regulatory, and contractual duty to cancel the balance of any borrower who has made 120 PSLF-qualifying payments, which requires the processing of borrowers' PSLF Buyback applications.

151. Defendants have unlawfully denied borrowers their PSLF rights, including their right to loan cancellation, by, among other actions:

a. Withholding PSLF Buyback determinations,

b. Withholding qualifying payments that were previously credited to borrowers' accounts,

c. Failing to update borrowers' recent PSLF-qualifying payments, and

d. Withholding PSLF cancellation from borrowers who have satisfied all statutory requirements.

152. Defendants are unlawfully withholding PSLF forgiveness.

153. Plaintiffs and members of each class are harmed because the Department's actions causes them economic harm by causing them to make unnecessary payments on loans that lawfully should be cancelled and causes them to expend time and money to address the Department's withholding of legal, regulatory, and contractual rights related to PSLF.

**SECOND CAUSE OF ACTION**

*Arbitrary and Capricious Agency Action in Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)*

(On behalf of all Plaintiffs, and the PSLF Buyback Class, the PSLF Clawback Class, and the PSLF Qualifying Payments Withholding Class)

154. Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

155. The APA prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

156. The Department's decision not to process PSLF Buyback applications in the order in which they were received constitutes a final agency action under the APA.

157. The Department's clawback of borrowers' PSLF-qualifying payments constitutes a final agency action under the APA.

158. The Department's failure to post borrowers' recent PSLF-qualifying payments constitutes a final agency action under the APA.

159. Defendants have acted in a manner that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law by, among other actions:

a. Withholding PSLF Buyback determinations,

b. Withholding qualifying payments that were previously credited to borrowers' accounts,

c. Failing to update borrowers' recent PSLF-qualifying payments, and

d. Withholding PSLF cancellation from borrowers who have satisfied all statutory requirements.

160. Plaintiffs and members of each class are harmed because the Department's actions causes them economic harm by causing them to make unnecessary payments on loans that lawfully should be cancelled and causes them to expend time and money to address the Department's withholding of legal, regulatory, and contractual rights related to PSLF.

## **THIRD CAUSE OF ACTION**

*Contrary to Constitutional Right in Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(B)*

(On behalf of all Named Plaintiffs, AFT on behalf of its Members, and the PSLF Buyback Class, the PSLF Clawback Class, and the PSLF Qualifying Payments Withholding Class)

161. Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

162. The APA prohibits agency action that is "contrary to constitutional right" 5 U.S.C. § 706(2)(B).

163. The Department's decision not to process PSLF Buyback applications in the order in which they were received constitutes a final agency action under the APA.

164. The Department's clawback of borrowers' PSLF-qualifying payments constitutes a final agency action under the APA.

165. The Department's failure to post borrowers' recent PSLF-qualifying payments constitutes a final agency action under the APA.

166. The Fifth Amendment provides: "No person shall . . . be deprived of life, liberty,

or property, without due process of law." Due process requires that, at a minimum, individuals receive notice and an opportunity to be heard before they are deprived of property.

167. Named Plaintiffs, AFT's members, and members of each class who satisfy all PSLF requirements have a property interest in accruing PSLF credits and, ultimately, cancellation of their federal student loans.

168. These borrowers have been deprived of their PSLF-related property interest due to the Department's:

a. Withholding PSLF Buyback determinations,

b. Withholding qualifying payments that were previously credited to borrowers' accounts,

c. Failing to update borrowers' recent PSLF-qualifying payments, and

d. Withholding PSLF cancellation from borrowers who have satisfied all statutory requirements.

169. The Department has harmed Named Plaintiffs, AFT's members, and members of each class by not extending them notice and an opportunity to be heard before depriving them of their property interest in these ways.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

A. Declare that the Department has violated the APA by

a. unlawfully withholding of borrowers' rights under the PSLF program;

b. administering the PSLF program is manner that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; and

c. depriving borrowers of their property interest in PSLF, contrary to the constitution;

B. Issue permanent injunctive relief compelling the Department to comply with its statutory, regulatory, and contractual obligations, by:

a. Complying with HEA by timely processing borrowers' PSLF Buyback applications;

b. Complying with HEA by restoring PSLF-qualifying payments that were unlawfully clawed back by the Department;

c. Complying with HEA by crediting borrowers' accounts with all qualifying payments which they have paid; and

d. Complying with HEA by cancelling the loans of all borrowers who have satisfied all requirements of the PSLF program;

C. Award attorneys' fees as authorized by law; and

D. Grant such further relief as may be just and proper.

Date: October 30, 2026

/s/F. Paul Bland
F. Paul Bland
BERGER MONTAGUE PC
1001 G Street, NW
Suite 400 East
Washington, DC 20001
T. 202.221.5279
F. 215.875.4604
pbland@bergermontague.com

John G. Albanese*
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413

T. 612-594-5999
jalbanese@bergermontague.com

Persis Yu, DC Bar # 90014714
PROTECT BORROWERS (a fiscally sponsored project of the Shared Ascent Fund)
1025 Connecticut Ave NW, #717
(202) 618-1328
persis@protectborrowers.org

R. T. Winston Berkman-Breen, NY Bar No. 5559372
Laura C. Dismore*
PROTECT BORROWERS (a fiscally sponsored project of the Shared Ascent Fund)
40 Rector Street, 9th Floor
New York, NY 10006
winston@protectborrowers.org
laura@protectborrowers.org

*Attorneys for Plaintiff*

* Pro hac vice application forthcoming